**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**KAREN RENEE COLES,**

     **Plaintiff,**

**vs.**                         **Case No.  1:22cv199-AW/CAS**

**KILOLO KIJAKAZI,
Acting Commissioner,
Social Security Administration,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act (Act).  After consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On August 1, 2019, Plaintiff, Karen Renee Coles, filed an application for a period of disability and DIB and alleged disability beginning September 1, 2018.[1]  Tr. 16, 342-43.[2]  Plaintiff remained insured through December 31, 2022.  Tr. 16, 350.  Disability is based, in part, on fibromyalgia, cervical herniated disc symptoms, depression, anxiety, constipation, numbness in hands/feet, muscle pain/weakness, fatigue, IBS, nausea, blurred vision, memory problems, stomach pains, and headaches.[3] *See, e.g.*, Tr. 23, 355.

The application was initially denied on November 21, 2019, and upon reconsideration on June 2, 2020.  Tr. 16, 141-73, 175-77, 180-85.  On July 29, 2020, Plaintiff requested a hearing and, after one postponement in March 2021, at Plaintiff's request, Tr. 248-52, 279-80, 448-49, on October 15, 2021, ALJ Raymond Rodgers held a telephone hearing due to circumstances presented by the Covid-19 Pandemic.  Tr. 16, 13-37, 303-

---

[1]  On September 1, 2015, Plaintiff filed a prior application for DIB and an application for Supplemental Security Income (SSI).  Tr. 112.  The case proceeded to a hearing and on August 31, 2018, the Administrative Law Judge (ALJ) determined Plaintiff was not disabled.  Tr. 128.  On May 21, 2019, the Appeals Council denied relief. Tr. 135.

[2]  Citations to the record (transcript/administrative record), ECF No. 12, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

[3]  This appeal focuses on Plaintiff's disability based on fibromyalgia.
Case No.  1:22cv199-AW/CAS

12, 324, 329-32.  Plaintiff and Michelle Bishop, an impartial vocational expert, testified.  Tr. 16, 38-81, 460-66 (Resume).  Mark N. Tipton, an attorney, represented Plaintiff at the hearing.  Tr. 16, 40, 234-36.

On November 3, 2021, the ALJ entered a decision and denied Plaintiff's application for DIB concluding that Plaintiff was not disabled from September 1, 2018, through the date of the decision.  Tr. 30-31.

Plaintiff requested the Appeals Council to review the ALJ's decision. Tr. 2, 5-6, 336-41.  Plaintiff's counsel submitted several Florida Retirement System Physician's Reports--February 6, 2018, and October 19, 2018, November 19, 2018, and June 5, 2020.  Tr. 2.  Plaintiff also submitted fifteen pages of records from Zubin Agarwal, M.D., dated January 10, 2022, and 5 pages of records from SIMED Arthritis Center, dated March 8, 2022. *Id*.

On June 13, 2022, the Appeals Council denied Plaintiff's request for review stating that the first set of submitted evidence "does not show a reasonable probability that it would change the outcome of the decision" and further noted that the Appeals Council "did not exhibit this evidence." Tr. 2.  Regarding the second set of submitted records, the Appeals Council noted that the ALJ denied Plaintiff's case through November 3, 2021, and that the additional evidence did not relate to the period at issue and "does

not affect the decision about whether [Plaintiff was] disabled beginning on or before November 3, 2021." *Id*. Plaintiff was further advised to file another application if consideration was requested for a disability after November 3, 2021. *Id*.

The ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On August 16, 2022, Plaintiff filed a Complaint with this Court seeking review of the ALJ's decision. ECF No. 1. The parties filed memoranda of law which have been considered. ECF Nos. 18 and 21.

## II.  Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. "The claimant meets the insured status requirements [for DIB] of the Social Security Act through December 31, 2022." Tr. 18.

2. "The claimant has not engaged in substantial gainful activity during since September 1, 2018, the alleged onset date." *Id*.

3. "The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; fibromyalgia; carpal tunnel syndrome; degenerative joint disease of the right foot and MPJ with osteoarthritis; chronic pain syndrome, and depression." *Id*. The ALJ determined that Plaintiff's "decreased vision and temporomandibular joint pain are non-severe impairments because they do not cause more than minimal functional limitation." *Id*. Plaintiff has been diagnosed and treated for myopia and astigmatism and prescribed glasses.

*Id*.  "[A] consultative examiner found normal visual acuity, normal visual field and eye movement and good reading ability even without glasses…. While the claimant sometimes has TMJ inflammations, her ENT specialist recommended night guards while awaiting treatment."  Tr. 18.

4. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[4]  Tr. 19.  In part, the ALJ considered Plaintiff's degenerative disc disease of the cervical and lumbar spine and determined the requirements of Listing 1.15 were not met.  *Id*.  The ALJ also determined that the claimant did not meet the elements of Listings 1.14-1.16, and 1.18.  Tr. 19-20.  Additionally, the ALJ considered the criteria of Listings 12.04, 12.06 and the "paragraph B" criteria.  Tr. 20.  The ALJ determined that the claimant had a *moderate* limitation in understanding, remembering, or applying information; a *moderate* limitation in interacting with others, and regarding concentrating, persisting, or maintaining pace; and *moderate* limitation for adapting or managing oneself.  Tr. 21.[5]  The ALJ also considered whether the "paragraph C" criteria, applicable to mental disorders, were satisfied and determined that the Plaintiff's mental impairments did not satisfy these criteria.  *Id*.

5. "[T]he claimant has the residual functional capacity [RFC] to: lift/carry 10 pounds occasionally and 5 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for two hours in an eight-hour workday; no operation of foot controls; occasional climbing of ramps or stairs, but no climbing of ladders, ropes or scaffolds; frequent balancing, stooping and kneeling; occasional crouching; no crawling; frequent forward, lateral and overhead reaching; frequent handling and fingering; must avoid

---

[4]  The ALJ is not required to identify all impairments that should be considered severe.  *See Heatly v. Comm'r of Soc. Sec.,* 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished); *see also Mariarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Plaintiff does not claim the ALJ omitted a severe impairment.  ECF No. 18.

[5]  The ALJ correctly stated that the limitations identified in the "paragraph B" criteria are not an RFC assessment, but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process.  Tr. 22.  Case No.  1:22cv199-AW/CAS

concentrated exposure to extreme cold and vibration; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry-out simple and detailed tasks while maintaining attention and concentration for two hours at a time before requiring a regular scheduled break; no fast-paced production; low stress work, defined as only occasional decision-making only occasional changes in the work setting; frequent interaction with coworkers and supervisors; and occasional interaction with the public."  Tr. 22."[6]  [The RFC is almost a verbatim recitation from the hypothetical provided to the vocational expert.  *See* Tr.  68-69.]

6.  "The claimant is unable to perform past relevant work" as a proctor (SVP of 5, light exertional level); administrative clerk (SVP of 6, sedentary exertional level); office clerk (SVP of 3, light exertional level); and eligibility worker (SVP of 6, sedentary exertional level). The ALJ further determined that "[t]he claimant's past relevant work exceeds the [RFC]."  Tr. 29, 69.

7.  The claimant was born in 1978 and "was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date."  Tr. 29.  Plaintiff has at least a high school education. Transferability of jobs is not material in this case.  *Id*.

8.  "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as document preparer, printed circuit board screener, and table worker, all with an SVP of two (unskilled) and sedentary exertional level.[7]  Tr. 29-30, 69.  This conclusion is based on the vocational expert's testimony.  Tr. 30, 69.

---

[6]  "Occasionally" means: "activity or condition exists up to 1/3 of the time." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § IV Physical Demands-Strength Rating.  "Frequently" means: "activity or condition exists from 1/3 to 2/3 of the time."  *Id*.

[7]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of

9. "The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2018, through the date of [the ALJ's] decision."  Tr. 30.

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (Substantial evidence "means-and means only-such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citations and internal quotation marks omitted)).  "Substantial evidence is more than a scintilla, but less than a preponderance."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

---

walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985). A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including one month."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1981), App. C: Components of the Definition Trailer, § II, SVP.  "[SVP] it is defined as the amount of elapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id*.  Unskilled work corresponds to an SVP of 1 and 2.  SSR  00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  *See Buckwalter v. Comm'r of Soc. Sec.*, 5 F.4th 1315 (11th Cir. 2021) (discussing SVP Levels 1 and 2).

1983) (citations omitted); *accord Moore v. Barnhart*, 405 F.3d 1208, 1211

(11th Cir. 2005) (per curiam).  The threshold for substantial evidence is "not

high."  *Biestek v. Berryhill*, 139 S. Ct. at 1154.  "The Commissioner's factual

findings are conclusive if supported by substantial evidence."  *Wilson v.*

*Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  Further,

"[w]e may not decide the facts anew, reweigh the evidence, or substitute

our judgment for that of the [Commissioner]."  *Winschel v. Comm'r of Soc.*

*Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (alteration in original) (quotation

omitted).  "If the Commissioner's decision is supported by substantial

evidence we must affirm, even if the proof preponderates against it."

*Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations

omitted), superseded on other grounds by 20 C.F.R. § 404.1520c.

    "In making an initial determination of disability, the examiner must

consider four factors: '(1) objective medical facts or clinical findings; (2)

diagnosis of examining physicians; (3) subjective evidence of pain and

disability as testified to by the claimant and corroborated by [other

observers, including family members], and (4) the claimant's age,

education, and work history.'"  *Bloodsworth*, 703 F.2d at 1240 (citations

omitted).  A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. *Barnhart v. Walton*, 535 U.S. 212, 224 (2002). In addition, an individual is entitled to DIB if under a disability prior to the expiration of their insured status, here, December 31, 2022. *See* 42 U.S.C. § 423(a)(1)(A); *Moore v. Barnhart*, 405 F.3d at 1211; *Torres v. Sec'y of Health & Human Servs.*, 845 F.2d 1136, 1137-38 (1st Cir. 1988); *Cruz Rivera v. Sec'y of Health & Human Servs.*, 818 F.2d 96, 97 (1st Cir. 1986).

Plaintiff had to prove that she became disabled on or before September 1, 2018, through the date of the ALJ's decision, November 3, 2021. Tr. 16, 30. A showing that an impairment became disabling after the expiration of the claimant's insured status is insufficient to establish

eligibility for DIB.  *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830,

831 (11th Cir. 2011) (unpublished).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful
   activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet
   or equal the criteria listed in Appendix 1 of 20 C.F.R. Part
   404, Subpart P?

4. Does the individual have the RFC to perform work despite
   limitations and are there any impairments which prevent past
   relevant work?[8]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results

in disapproval of the application for benefits.  A positive finding at step

---

[8]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R.
§ 404.1545(a)(1).  It is an assessment based upon *all* of the relevant evidence including
the claimant's description of limitations, observations by treating and examining
physicians or other persons, and medical records.  *Id.*; *see* SSR 96-8p (July 2, 1996);
*see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) (per
curiam) ("Consideration of all impairments, severe and non-severe, is required when
assessing a claimant's RFC.").  The responsibility for determining a claimant's RFC lies
with the ALJ.  20 C.F.R. § 404.1546(c); *see Cooper v. Astrue*, 373 F. App'x 961, 962
(11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the
province of the ALJ, not a doctor").  Relevant medical and other evidence includes,
among other things, medical history, medical signs and laboratory findings, (*i.e.*, side
effects of medication), daily activities, lay evidence, recorded observations, and ethical
source statements.  SSR 96-8p (July 2, 1996).

three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  *Phillips*, 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Chester*, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v).  If the Commissioner carries this burden, the claimant must prove an inability to perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

A claimant bears the burden of proving disability and is responsible for producing evidence in support of the claim.  *See* 20 C.F.R. § 404.1512(a); *Moore*, 405 F.3d at 1211.

## IV. Legal Analysis

### The ALJ did not err when denying Plaintiff's application for Social Security benefits.

1.

Plaintiff argues substantial evidence does not support the ALJ's finding that Plaintiff can work full time without significant accommodations from her employer.  ECF No. 18 at 9, 12-13.  Stated otherwise, Plaintiff claims that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence which, according to Plaintiff, establishes Plaintiff's inability to work for 40 hours a week as a result of fibromyalgia.  *Id*. at 12.  Thus, Plaintiff challenges the ALJ's step five decision.  *Id*.  In support, Plaintiff relies on a "Fibromyalgia Residual Functional Capacity Questionnaire", hereinafter "Questionnaire," dated July 29, 2021, completed by Plaintiff's primary treating physician, Ariane Harris, M.D., Tr. 1397-1401.  ECF 18 at 4-8, 16-18.  Substantial evidence supports the ALJ's disability determination in light of all the evidence presented and considered by the ALJ.

2.

An ALJ was required to weigh a medical opinion by a treating physician under prior regulations applicable to claims filed *before* March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  However, in 2017, the Commissioner

promulgated new regulations governing the consideration of medical opinions for purposes of reviewing applications for SSI and DIB. The regulations applicable to this case remove the treating source rule and state "[an ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)...." *See* 20 C.F.R. § 404.1520c(a). Instead, the ALJ must weigh medical opinions based on their persuasiveness. *See id.; see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022).[9]

The relatively new regulations control consideration of the proper weight given to medical opinions. *See* 20 C.F.R. § 404.1520c(a)-(c); *see also* 20 C.F.R. § 404.1513(a)(2) (defining medical opinion). The regulations contain a source-level articulation requirement, *i.e.,* the ALJ considers multiple medical opinions from a source in a single analysis. 20 C.F.R. § 404.1520c(b)(1). The ALJ is not required to address every limitation identified by a medical source. *Id*.

Under the regulations applicable to this case, an ALJ must consider and assess medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) the

---

[9] The new medical opinion regulations apply in this case as noted by the ALJ, Tr. 22. *Harner*, 38 F.4th at 896.

specialization of the medical source; and (5) other factors that tend to support or contradict a medical opinion, including the source's familiarity with other evidence in the claim, or understanding of SSA policies and evidentiary requirements.  20 C.F.R. § 404.1520c(c)(1)-(5).  "The most important factors we consider when we evaluative the persuasiveness of medical opinions and prior administrative medical findings are *supportability* (paragraph (c)(1) of this section) and *consistency* (paragraph (c)(2) of this section)."  20 C.F.R. § 404.1520c(a) (emphasis added).  "Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2).

Regarding "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  Regarding "consistency," "[t]he more consistent a prior medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) or prior administrative medical finding(s) will be."  20

C.F.R. § 404.1520c(c)(2).  "A medical source may have a better

understanding of your impairment(s) if he or she examines you than if the

medical source only reviews evidence in your folder."  20 C.F.R.

§ 404.1520c(c)(3)(v).  "When we consider a medical source's familiarity

with the other evidence in a claim, we will also consider whether new

evidence we receive after the medical source made his or her medical

opinion or prior administrative medical finding makes the medical opinion

or prior administrative medical finding more or less persuasive." 20 C.F.R.

§ 404.1520c(c)(5).  "[ALJs] are not required to adopt any prior

administrative medical findings, but they must consider this evidence

according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate."

20 C.F.R. § 404.1513a(b)(1).

3.

The American College of Rheumatology has stated that fibromyalgia

is both real and difficult to confirm.  *See generally* Frederick Wolfe, *et al.*,

The American College of Rheumatology Preliminary Diagnostic Criteria for

Fibromyalgia and Measurement of Symptom Severity, 62 Arthritis Care &

Research 600 (May 2010).  An extensive body of case law pre-dates the

effective date of SSR 12-2p relating to courts' treatment of social security

disability claims based on fibromyalgia.  *See Johnson v. Colvin*, No.

1:14cv149-WS/CAS, 2015 U.S. Dist. LEXIS 55388, at *31-38 (N.D. Fla.

Mar. 25, 2015), *adopted*, 2015 U.S. Dist. LEXIS 55381 (N.D. Fla. Apr. 27,

2015), for a discussion of the legal standards in fibromyalgia cases pre-

dating SSR 12-2p and a discussion of SSR 12-2p.  The following is a brief

explanation of SSR 12-2p derived from *Johnson*.

The Social Security Administration issued SSR 12-2p to assist

factfinders in the evaluation of fibromyalgia.  SSR 12-2p, 2012 SSR LEXIS

1 at *1.  Social Security Ruling 12-2p "provides that once a person is

determined to have fibromyalgia her statements about symptoms and

functional limitations are to be evaluated according to the two-step process

set forth in SSR 96-7p, 1996 SSR LEXIS 4."  *Tully v. Colvin*, 943 F. Supp.

2d 1157, 1165 (E.D. Wash. 2013); *see* SSR 12-2p, 2012 SSR LEXIS 1 at

*14.  "These policies provide that '[i]f objective medical evidence does not

substantiate the person's statements about the intensity, persistence, and

functionally limiting effects of symptoms, we consider all [of the] evidence in

the case record.'"  *Id*. (quoting SSR 12-2P, 2012 SSR LEXIS 1); *see*

Evaluation of Fibromyalgia, 77 Fed. Reg. 43,640 (July 25, 2012).

Social Security Ruling 12-2p provides that the Social Security

Administration "will find that a person has an MDI [medically determinable

impairment] of FM [fibromyalgia] if the physician diagnosed FM and provides the evidence we describe in section II.A. *or* section II.B., *and* the physician's diagnosis is not inconsistent with the other evidence in the person's case record." SSR 12-2p, 2012 SSR LEXIS 1 at *4 (emphasis added). Sections II.A. and II.B. include *two sets of criteria for diagnosing fibromyalgia*--the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia *or* the 2010 ACR Preliminary Diagnostic Criteria. *Id*. The ALJ generally referred to these criteria in his decision. Tr. 22, 26.

The first set of criteria (1990) requires that the claimant demonstrate: (1) a history of pain; (2) at least 11 positive tender points[10] on physical examination and the positive tender points must be found bilaterally, on the left and right sides of the body and both above and below the waist; *and* (3) evidence that other disorders, which could cause the symptoms or signs were excluded. SSR 12-2p, 2012 SSR LEXIS 1 at *5-7 (§ II.A.1.-3. criteria).

---

[10]  The criteria in section II.B. of SSR 12-2p may be used "to determine an MDI of FM if the case record does not include a report of the results of tender-point testing, or the report does not describe the number and location on the body of the positive tender points." 2012 SSR LEXIS 1 at *6 n.6 (§ II.A.2.b.). In other words, tender-point testing under section II.A.2. may not be the exclusive manner to determine an MDI of FM.

The second set of criteria (2010) requires that the claimant demonstrate: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions[11]; *and* (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions[12] were excluded.  SSR 12-2p, 2012 SSR LEXIS 1 at *7-9.  *See Lillard v. Comm'r, Soc. Sec.,* Civil Case No. JKB-13-1458, 2014 U.S. Dist. LEXIS 66720, at *6 n.1 (D. Md. May 14, 2014).

Social Security Ruling 12-2p provides guidance regarding the documentation needed, other sources of evidence, and what can be done if the evidence is insufficient.  Guidance is also provided regarding how FM is

---

[11]  Symptoms and signs that may be considered include the "(s)omatic symptoms" referred to in Table No. 4, "Fibromyalgia diagnostic criteria," in the 2010 ACR Preliminary Diagnostic Criteria.  We consider some of the "somatic symptoms" listed in Table No. 4 to be "signs" under 20 C.F.R. 404.1528(b) and 416.928(b).  These "somatic symptoms" include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms.

2012 SSR LEXIS 1 at *8 n.9.

[12]  *See* SSR 12-2p, 2012 SSR LEXIS 1 at *9 n.10 for a list of these conditions.
Case No.  1:22cv199-AW/CAS

considered in the five-step sequential evaluation process.  SSR 12-2p,

2012 SSR LEXIS 1 at *9-19.

4.

As noted herein, SSR 12-2p discusses what a claimant must show

to establish that her fibromyalgia is a medically determinable impairment.

In the decision, the ALJ engaged in this analysis by weighing and

discussing opinions from Plaintiff's acceptable medical sources;

considering Plaintiff's longitudinal records, including patient records from

Dr. Harris; and assessing Plaintiff's credibility.  Tr. 23-29.

When determining whether Plaintiff has "severe impairments," the

ALJ

> has given consideration to Social Security Ruling 12-2, and finds
> that the claimant's fibromyalgia satisfies the criteria necessary to
> establish condition as a medically determinable impairment.  As
> fibromyalgia is identified as a medically determinable impairment,
> consideration will be given to any functional limitations resulting
> from fibromyalgia in the [RFC] assessment in addition to any
> limitations resulting from any other physical or mental impairment
> identified.

Tr. 20.

Plaintiff argues that the ALJ's step five finding was not supported by

substantial evidence because the ALJ did not properly consider Plaintiff's

fibromyalgia pursuant to SSR 12–2P, referred to above, *supra* at 15-19.

The ALJ found Plaintiff's fibromyalgia was a severe impairment.

Tr. 18.  The ALJ cited to SSR 12–2p with an explanation.  Tr. 20.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's fibromyalgia diagnosis.  Tr. 23.  The ALJ "reviewed and analyzed all the evidence of record and hearing testimony, whether or not it is specifically cited in this decision," and found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely persuasive for the reasons explained in this decision."  *Id*.  The ALJ explicitly considered Plaintiff's fibromyalgia and found the evidence did not support Dr. Harris's extreme opinion.  Tr. 28.  No error has been shown.

Although Plaintiff has not been employed since September 1, 2018, the ALJ began his review of the medical evidence with an MRI of the cervical spine dated October 2014, which "showed no neural impingement and no obvious demyelinating lesions."  Tr. 23.  An MRI of the lumbar spine revealed mild disc bulges without neural impingement.  EMG and nerve conduction studies of the right arm and leg, from September 2015, were negative.  A cervical MRI from October 2016 revealed mild disc

disicration [sic] in the mid cervical spine and focal ligamentous flavum redundancy at C6 without canal stenosis or foraminal narrowing.  *Id*.

An April 2020 x-ray of the bilateral hands was normal; a July 14, 2020, MRI of the thoracic spine revealed mild to moderate findings with no more than mild neuroforaminal narrowing, but without nerve root impingement.  An MRI of the cervical spine completed the same day, showed mild-to-moderate findings, including minimal anterolisthesis of cervical areas, and retrolisthesis of C5 on C6 and C6 and C7; multilevel disc degeneration was small to moderate posterior disc osteophyte complexes; central annular fissuring at C5-6, but no significant canal stenosis, no definitive neural foraminal nerve root impingement.  Tr. 23.  A September 24, 2020, x-ray of the lumbar spine was unremarkable.  *Id*.  An October 29, 2020, MRI of the lumbar spine showed mild disc degeneration with minimal posterior annular bulges; right lateral recess stenosis and nerve root impingement at L4-5; and minimal to mild interspinous signal changes, most prominent at L4-5.  A November 3, 2020, MRI of the right foot revealed minimal soft tissue edema overlying the first MTP joint with no other major issues.  Tr. 24.

Immediately following these observations, the ALJ notes: "[p]hysical examination findings strongly support the claimant's ability to do work

related activity, consistent with the [RFC] finding." *Id.* Thereafter, the ALJ

considered 2018 neurology records from Gary Von Atkins, P.A., and a

follow-up visit in January 2019; a physical examination from pain specialist

Tyler Craig, M.D.; and orthopedic records dated September 13, 2018, from

Jason Zaremski, M.D. *Id.*

Eftim Adhami, M.D., evaluated Plaintiff on October 28, 2019, and

noted that Plaintiff "used no assistive devices." Tr. 24. The ALJ further

noted from Dr. Adhami's evaluation:

> There was no evidence of lumbar paravertebral muscle spasms,
> and straight leg raise was normal bilaterally.  Pinprick and tactile
> sensation were slightly diminished in the right foot.  However,
> sensation was otherwise intact throughout the body.  Muscle
> strength was 5/5 throughout, including bilateral grip strength.
> Some pain was appreciated in back full flexion, but was otherwise
> full.  Tinel's was positive in both wrists.  However, the joints were
> free in movement without evidence of inflammation or swelling;
> and gait was  normal.  Diagnoses include symptoms suggestive of
> carpal tunnel syndrome and possible lumbar radiculopathy
> affecting the right foot (Exhibit B4F) [Tr. 717-18].

*Id.*[13] Further,

> The claimant was in no acute distress during a rheumatology
> evaluation completed by Sheetal Patel, M.D. on April 28,
> 2020.  There were multiple diffuse tender points in the bilateral
> upper and lower extremities.  All joints were subjectively
> tender on palpation but without swelling.  Right great toe IP

---

[13]  Dr. Adhami did not provide a medical opinion as defined in 20 C.F.R.
§ 404.1513(a)(2) that needed to be evaluated under 20 C.F.R § 404.1520c.  It seems
Plaintiff bases an argument on case law referring to medical opinion evaluation
standards under the prior treating physician rule which no longer apply.  ECF No. 18 at
16. *Harner*, 38 F.4th at 896-97.  Plaintiff's argument regarding the ALJ's consideration
of Dr. Adhami's evaluation is rejected.

Case No.  1:22cv199-AW/CAS

tenderness was noted to move and touch, but without swelling or redness.  The claimant had normal movement of all extremities.  No abnormalities were noted in the bilateral shoulders, cervical spine, thoracic spine, lumbar spine, bilateral hips, bilateral knees, or with standing and sitting postures.  Sensation was intact and motor strength was normal (Exhibit B6F/22-23) [Tr. 745-46].

\*\*\*

Follow up rheumatology examination on January 27, 2021 with Dr. Patel, was positive for diffuse bilateral upper and lower extremity multiple tender points and right greater than left toe IP tenderness.  However, there was no swelling and the claimant appeared in no acute distress.  There was no evidence of small joint swelling or tenderness and no evident abnormalities of the bilateral shoulders, cervical spine, thoracic spine, lumbar/lumbosacral, hips or knees.  Sitting, standing and motor strength were normal (Exhibit B11F/21-22) [Tr. 1003-04].  During rheumatology follow up with Meghavi Kosboth, D.O., in April 2021, the claimant reported doing ok overall (Exhibit B12F/1) [Tr. 1145].  Physical examination was positive for bilateral first CMC basal joint squaring, left greater than right; diffuse allodynia; and tenderness to palpation of the lumbar and cervical paraspinal muscles.  However, there was no evidence of synovitis (Exhibit B12F/3)[.] [Tr. 1390-92, 1456-58].

Orthopedist, Rull Toussaint, M.D., evaluated the claimant on July 14, 2021 for complaints of right foot pain. Examination was positive for tenderness at the hallux MPJ and pain with passive motion.  X-ray revealed mild degenerative joint disease hallux MPJ and hallux valgus deformity.  However, gait, right lower extremities pulses, right lower extremity DTRs and coordination were normal.  Sensation was intact to light touch throughout the peripheral nerve distributions (Exhibits B21F, B26F)

Neurology records from Justin Yancey, M.D. dated August 27, 2021 indicate recent brain MRI showed no cause for right side

symptoms of pain and numbness.  There was no change from prior MRI completed in 2015, and no previous MRI evidence of demyelinating disease of the cervical or thoracic spine (Exhibit B24F/1, 7) [Tr. 1402, 1408].  Extensive rheumatology testing showed no evidence of autoimmune disease (Exhibit B24F/2) [Tr. 1403].  Examination revealed some limitation of strength in the arms, secondary to pain; gait was antalgic; and DTRs were abnormal in both legs.  However, the remained [sic] of the examination was within normal limits, including intact sensation throughout, no evidence of muscle atrophy, tremor, or muscle fasciculations; and intact coordination.  No treatment was offered.  The claimant was instructed to follow up with pain management and rheumatology, and return to neurology, as needed (Exhibit B24F/4-5) [Tr. 1405-06].

The claimant's  medical treatment history is inconsistent with her debilitating allegations.  X-rays, MRIs and EMG studies revealed no more than mild to moderate findings.  The claimant was treated by orthopedists, neurologists, rheumatologists, and pain management specialists.  However, no treating or examining physician recommended surgery or aggressive treatments for her upper or lower back, fibromyalgia, feet or hands.  She was treated with medications, injection and physical therapy.

The residual functional capacity findings more than accounts for the claimant's limitations.  Specifically, although the claimant has fibromyalgia, she is limited to sedentary work activity with postural, reaching, manipulative, and environmental limitations that more than account for her allegations of pain and fatigue.   Moreover, the claimant's musculoskeletal impairments including her lower extremity impairments, back and neck impairments, and carpal tunnel syndrome are well accounted for the lifting/carrying as well as sitting and standing limitations from the sedentary residual functional capacity finding.   Lastly, the claimant's pain allegations are more than accounted for by the non-exertional limitations of simple and detailed tasks with no fast pace production requirements.

*Id.* at 24-26.

Case No.  1:22cv199-AW/CAS

The gap noted above omitted the ALJ's consideration of records from

Ariane Harris, M.D., as follows

> Records from Ariane Harris, M.D. dated November 17, 2020, indicate severe right L5-S1, radicular pain (Exhibit B7F/6) [Tr. 776]. However, the claimant exhibited only mild pain behaviors with movement, and she was in no acute distress. No atrophy was evident on musculoskeletal evaluation. There was mildly increased kyphosis of the thoracic spine; and a moderate decrease in range of motion of the spine, with tenderness to palpation across the bilateral lumbar paraspinals, right greater than left. Sensation was decreased to light touch throughout entire right lower extremity. However, gait was only mildly antalgic without an assistive device; strength and cranial nerves were grossly intact; and reflexes were normal (Exhibit B7F/9-10) [Tr. 779-80]. Follow up evaluation on January 13, 2021 was essentially unchanged (Exhibit B11F/4) [Tr. 986].

*Id.* at 25. Later in the decision, the ALJ discusses the July 29, 2021,

"Questionnaire" which is the main subject of Plaintiff's argument in favor of

disability. The ALJ weaves Dr. Harris's evaluation with other medical

source evaluations as follows:

> Dr. Harris opined on July 29, 2021 the claimant should perform no bending; no lifting greater than 10 pounds, and no twisting. She was limited to sedentary work, with frequent breaks and position changes, that would be required, making it difficult for her to engage in a competitive work environment (Exhibit B30F/5) [Tr.1476]. [14] On

---

[14] Courts have found checkbox notations are "not particularly informative" and are "weak evidence at best." *See Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); *Dixon v. Astrue*, No. 5:09-cv-320/RS/EMT, 2010 U.S. Dist. LEXIS 125831, at *46-48  (N.D. Fla. Oct. 26, 2010) (explaining that ALJ properly rejected opinions expressed by treating physician on "check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (unpublished) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations); *see also Foster v. Astrue*, Case No.  1:22cv199-AW/CAS

a medical source statement, also dated July 29, 2021, Dr. Harris opined the claimant was capable of an extremely limited range of sedentary work activity (Exhibit B23F) [Tr. 1397-1406] [*see also* ECF No. 18 at 4-8]. On a fibromyalgia residual functional capacity statement, Dr. Harris opined the claimant was capable of less than full range of sedentary work (Exhibit B22F) [Tr. 1393-96]. The opinions are not persuasive, nor consistent with the evidence of record. Specifically, cervical, thoracic, lumbar, hand and foot imaging and EMG studies revealed no more than moderate findings (Exhibits B2F/35-36, 179 [Tr. 510-11, 654]; B6F/18, 24, 37-38, 156-157 [Tr. 741, 747, 760-61]; B7F/ 151-152, 154-155, 156-57, 162 [Tr. 921-22, 924-27, 932]; B10F/5 [Tr. 972]). Additionally, the opinions are not consistent with Dr. Harris' own examination findings, as well as the more specialized examinations from orthopedists, rheumatologists, neurologists, consultative examiners, and pain management specialists. Specifically, pain specialist Dr. Craig found normal gait, intact motor strength, normal and symmetric. Recommended treatment only included massage therapy (Exhibit B2F/38) [Tr. 513]. Orthopedist, Dr. Zaremski, found normal gait and 5/5 muscle strength throughout (Exhibit B2F/16) [Tr. 491]. Consultative examiner, Dr. Adhami, also found normal gait, and no evidence of limited joint movement, inflammation or swelling (Exhibit B4F). Rheumatologist, Dr. Patel, found normal movement in all extremities; no abnormalities in the bilateral shoulders, cervical spine, thoracic spine, lumbar spine, bilateral hips, bilateral knees, or with standing and sitting postures; intact sensation; and normal motor strength (Exhibit B6F/22-23) [Tr. 745-46]. Lastly the opinion is inconsistent with the claimant's conservative treatment history; no recommendations for surgical intervention; and the claimant's activities of daily living, which includes care for a teenage child, household chores, and other activities of daily living as previously mentioned.[15]

---

410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physicians use of "questionnaire" format typifies "brief or conclusory" testimony). Arguably, Dr. Harris did not provide an acceptable explanation for her opinions or refer to objective medical evidence to support her opinions in this case. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

[15]  The ALJ stated that Plaintiff's "high functioning activities of daily living are inconsistent with her physical and mental allegations of disability. The claimant has no

*Id*. at 28.

As noted previously, the regulations applicable to this case remove the treating source rule and state an ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinions. *See* 20 C.F.R. § 404.1520c(a)-(b).  Generally, the ALJ restated this rule. Tr. 22.

The ALJ considered Dr. Harris's conservative treatment, Plaintiff's pain treatment with medications and physical therapy; and she made no recommendations for surgery. Tr. 28, 776–81, 983–88.  *See* 20 C.F.R. § 404.1520c(c)(1) (supportability factor).  Further, the opinions are not consistent with Dr. Harris's examination findings, which showed only mild pain behaviors with movement; and she was in no acute distress.  Tr. 25, 779.  No atrophy was evident on a musculoskeletal evaluation.  *Id*.  There

---

difficulty performing personal care independently or managing her medications independently [*e.g*., sets daily alarm on phone to remind her; Tr. 401].  She's able to clean with breaks and do laundry.  She drives, reads, watches TV and attends church online.  She socialized with family, gets along well with authority figures, and she was never fired from a job for problems getting along with others (Exhibits B9E, B5F/4 [Tr. 399-413, 722]).  Lastly, the claimant cares for her teenage son and tries to exercise."  Tr. 27; *see* 20 C.F.R. § 404.1520c(c)(2) (consistency factor).  Although not dispositive, the claimant's activities may show that her symptoms are not as limiting as alleged and as reflected in the ALJ's RFC.  *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1527(c)(4), 404.1529(c)(3)(i).  *But see Lewis v. Callahan*, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).  Whether Plaintiff has "high functioning activities of daily living" may be debatable and contrary to other information in the record but is not of such weight as to overrule the ALJ's findings given the standard of review.
Case No.  1:22cv199-AW/CAS

was mildly increased kyphosis of the thoracic spine and a moderate

decrease in range of motion of the spine, with tenderness to palpation

across the bilateral lumbar paraspinals, right greater than left.  *Id*.

Sensation was decreased to light touch throughout the entire right lower

extremity.  Tr. 25, 779–80.  However, gait was only mildly "ataxic" without

an assistive device; and cranial nerves were grossly intact; and reflexes

were normal.  *Id*.  *See* 20 C.F.R. § 404.1520c(c)(1) (supportability factor).

Further, as noted by the ALJ, cervical, thoracic, lumbar, hand and

foot imaging and EMG studies reveal no more than moderate findings.

Tr. 28; *see* 20 C.F.R. § 404.1520c(c)(2) (consistency factor).  The ALJ

explained Dr. Harris's opinions were not consistent with the more

specialized examinations from orthopedists, rheumatologist, neurologist,

consultative examiners, and pain management specialists.

Tr. 28; *see* 20 C.F.R. § 404.1520c(c)(2) (consistency factor).  In particular,

pain specialist Dr. Craig found normal gait, intact motor strength, normal

and symmetric; recommended treatment only included massage therapy.

Tr. 28.  Orthopedist, Dr. Zaremski, found normal gait and 5/5 muscle

strength throughout.  *Id.*  Evaluations from Dr. Adhami and rheumatologist,

Dr. Patel, similarly do not support Plaintiff's claim of disability.  *Id*.

Plaintiff argues, in brief, that the ALJ improperly relied on

Dr. Adhami's evaluation because he "failed to ask Ms. Coles any questions regarding her subjective pain and failed to test any trigger points.  As a result, even under a substantial evidence standard, the ALJ improperly gave weight to the consultive exam by" Dr. Adhami.  ECF No. 18 at 18.

The relatively new regulations revise the definition of "medical opinion."  Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations.  20 C.F.R. § 404.1513(a)(2).  *Contrast with* 20 C.F.R. § 404.1527(a)(2) (2016); *id*. at § 404.1527(a)(1) (2017).  Plaintiff did not raise an argument that the ALJ needed to evaluate evidence from Dr. Adhami as a medical opinion under the governing regulations.  Further, Dr. Adhami did not provide a statement about functional limitations that qualifies as a medical opinion under 20 C.F.R. § 404.1513(a)(2).  Rather, Dr. Adhami described Plaintiff's subjective examination findings and made diagnoses which do not fall within the category of a medical opinion as defined in 20 C.F.R. § 404.1513(a)(2).  Tr. 24, 26, 713-18.

The fact that Dr. Adhami did not expressly ask Plaintiff questions regarding her subjective pain and did not test any trigger points does not impermissibly detract from the ALJ's mention of portions of his evaluation.

The overall medical evidence and the other evidence in the record recited by the ALJ supports the ALJ's finding that Dr. Harris's evaluation was not persuasive.

Plaintiff suggests, without citation to other record medical evidence, including that of Dr. Harris, that the ALJ improperly substituted his judgment for that of Dr. Harris. *See* ECF No. 18. As noted above, the responsibility to determine a claimant's RFC is based on all the evidence. *See supra* at 10 n.8. An ALJ does not substitute judgment for that of a medical source by simply carrying out the regulatory role as an adjudicator who is responsible for assessing a claimant's RFC. *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486, 488 (11th Cir. 2012) (unpublished).

Plaintiff has not shown that the ALJ erred when considering the medical and other evidence, including Dr. Harris's opinion. In essence, Plaintiff is requesting this Court to reweigh the evidence and draw different conclusions from the same evidence. But that is not this Court's role. No error has been shown.

Case No.  1:22cv199-AW/CAS

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for DIB be **AFFIRMED** and Judgment entered for Defendant.[16]

**IN CHAMBERS** at Tallahassee, Florida, on March 10, 2023.

> **s/  Charles A. Stampelos**
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**

---

[16]  This Report and Recommendation shall be linked to the Complaint, ECF No.1, as prompted by CM/ECF.

Case No.  1:22cv199-AW/CAS